## JOHN PHILLIPS *v.* GEORGE MAXWELL.

1. LANDLORD AND TENANT. *Lien for rent. How enforced by attachment against innocent purchasers, and when.* A landlord may fix and make specific his inchoate lien, before the debt for rent has become due, by attaching the crop raised upon his premises, when in the possession of third parties, impounding it subject to the judgment and execution, which may be recovered at the termination of the suit. The lien thus made fixed and specific, relates back to the date of the contract, and overreaches any title acquired by a purchaser of the crop from the tenant, although without notice of the lien.

2. ARGUENDO. *Same. Same. No recovery from third parties, without notice. When.* By Section 3,542 of the Code, if the landlord elects to proceed against the purchaser for the *value* of the property, he cannot recover if the purchaser had no notice of the lien.

Cases cited: Davis *v.* Park & Campbell, 6 Yerg., 252; Ballentine *v.* Kercheval & Green, 6 Yerg., 267; Lawrence *v.* Jenkins, 7 Yerg., 494; Hardeman *v.* Shumate, Meigs R., 398; Bryan *v.* Buckholder, 8 Hum., 562; Hill *v.* George, 1 Head, 396.

Code, Sections 3,539, 3,540, 3,541, 3,542, Act of 1825.

### FROM GILES.

Appeal from the Chancery Court. W. S. FLEMING, Chancellor.

JNO. S. WILKES for complainant.

N. SMITHSON for defendant.

NICHOLSON, C. J., delivered the opinion of the Court.

On the 12th of January, 1867, John Phillips rented to George Maxwell about 90 acres of land, for the year 1867, for which Maxwell agreed to pay him $775 before the end of the year. Maxwell cultivated the land in cotton and corn; and by the first of November had gathered, and had ginned and baled nine bales of cotton. The cotton was ginned and baled at Phillips' gin, on his premises. Without the knowledge or consent of Phillips, Maxwell removed three of the bales and sold them. About the 12th of November, 1876, he started to remove three other bales, but was discovered by Phillips, who required him to bring them back and deposit them on Phillips' premises, with the other three bales. Phillips threatened to attach the cotton to secure his rent, but declined to do so upon Maxwell agreeing to leave the six bales in Phillips' possession until the rent should be satisfied.

Upon the evening of the same day, Maxwell went to Pulaski and contracted to sell the six bales to Malone & Houston, cotton dealers in that town, to be delivered during that day or night. Accordingly, about eight or nine o'clock at night, Maxwell delivered the cotton and consummated the trade, by receiving payment at the rate of 10 cents per pound. Phillips, finding· on the morning of the 13th, that the cotton

was gone, pursued on to Pulaski, where he found it in the possession of Malone & Houston, Maxwell in the meantime having absconded.

Thereupon Phillips immediately filed his attachment bill, and attached his cotton in the hands of Malone & Houston. In their answer they admit the purchase of the cotton, but deny that they had any knowledge or information that it was raised on rented land, but that they purchased it in the regular course of their business ; nor is their answer contradicted by the proof. The Chancellor held that Phillips, by his attachment bill, secured a specific lien upon the cotton, and ordered accordingly. From this decree Malone & Houston have appealed.

The single question for our determination in this case is, whether a landlord can enforce his lien for rent by attaching the crop in the hands of a firm who have purchased it without notice of the lien, and before the debt for rent had become due ?

The first act of the Legislature which provided for the landlord's lien, was passed in 1825, Chap. 21, Sec. 1, and is as follows : " When any debt shall be contracted to become due for rent, whether by note, account, or otherwise, the amount so contracted to become due and owing, shall be a lien on the crop growing or made on the premises, and shall have precedence over all other liens of every description whatever, till said debt for rent shall be discharged : provided, the lien hereby created shall only continue for three months after the time the rent shall fall

due, and until the decision of any suit that may be brought within that time for such rent."

The true meaning of this act had become settled by repeated adjudications, made from the date of its passage down to the adoption of the Code. By these adjudications it was settled—

1st. That the landlord had only a right of priority of payment over other creditors, and not a specific lien.

2nd. That he never could pursue the crop or its proceeds into the hands of a third party, without first getting judgment and execution against the tenant.

3rd. That the only mode of converting the landlord's inchoate lien or right of priority of payment into a fixed or specific lien, was by obtaining judgment and execution upon the debt due for the rent against the tenant.

4th. That when judgment and execution were obtained against the tenant, the lien became fixed and operative from the time at which the debt was due: *Davis* v. *Park & Campbell*, 6 Yerg., 252; *Ballentine & Kercheval* v. *Green*, 6 Yerg., 267; *Lawrence* v. *Jenkins*, 7 Yerg., 494; *Hardeman* v. *Shumate*, Meigs' R., 398; *Bryan* v. *Buckholder*, 8 Hum., 562; *Hill* v. *George*, 1 Head, 396.

It will be observed that, according to the principles settled in these cases, that the landlord had no remedy against third persons who might purchase or otherwise appropriate the crops raised by his tenants,

John Phillips *v.* George Maxwell.

if such purchase or 'appropriation was made before the debt for the rent became due.

In the case of *Bryan* v. *Buckholder,* Judge Green acknowledged that under the construction given to the Act, its object might be defeated by dishonest tenants, but he said the courts could extend the remedy no further than the Legislature had thought proper to go in the statute, and that this was one of many instances where the party is without remedy. So far as the Act of 1825 has been carried into the Code, we are bound to presume that it was adopted by the Legislature with the construction of its language settled by the previous adjudications of the Court. It becomes necessary, therefore, to refer to those sections of the Code which provide for the landlord's lien, to ascertain the present state of the law upon that subject.

Section 3,539 is as follows: "Any debt by note, account, or otherwise, created for the rent of land, is a lien on the crop growing or made on the premises, in preference to all other debts, from the date of the contract.

Section 3,540: " The lien continues for three months after the debt becomes due, and until the termination of any suit commenced within that time for such rent."

Section 3,541: " The lien may be enforced: 1. By original attachment, issued on affidavit that the rent is due and unpaid; or, before due, on affidavit that the defendant is about to remove ʃ or sell the

crop. 2. Or by judgment at law against the tenant, and execution to be levied on the crop in whosoever hands it may be."

Section 3,542: "And the person entitled to the rent may recover from the purchaser of the crop, or any part of it, with notice of the lien, the value of the property, so that it does not exceed the amount of the rent and damages."

It is observed that Sections 3,539 and 3,540 contain the substance of the Act of 1825 and its provisions, with this important difference: that by the Act of 1825 and its construction by the Court, the time at which the lien became operative was the time at which the debt became due; but by Section 3,539 the lien commences at the date of the contract. It follows that when the inchoate lien or priority of payment is converted into a fixed or specific lien, such fixed lien dates back to the date of the contract. This change in the Act of 1825 was made for the purpose of remedying the defect in that Act already referred to.

This is made still more manifest by the language used in sub-Section 2 of Section 3,541: " To be levied on the crop in whosoever hands it may be."

It is next observed that sub-Section 2 of 3,541 is but an enactment of the construction placed upon the Act of 1825, to-wit: that the lien of the landlord could be enforced against the tenant by judgment and execution against the tenant; and by that Act and its construction, this was the only remedy which the landlord had for the enforcement of his lien. But

by Section 3,541 he was furnished with the additional
remedy for enforcing his lien by original attachment.
He is authorized to resort to this remedy by simply
making affidavit that the rent is due and unpaid, or
if the rent is not due, that the defendant is about
to remove or sell the crop. This remedy, in connec-
tion with the provision in Section 3,539, which makes
the lien commence at the date of the contract, fur-
nishes the landlord with ample means to protect his
rights.

The remedy by attachment is independent and
complete within itself. To *"enforce* a lien by attach-
ment," *ex vi termini*, means that the landlord may
proceed to fix and make specific his inchoate lien by
levying his attachment on the crop raised on his
premises, whether in possession of the tenant or a
third party and others, impounding it subject to the
judgment and execution which he may recover at the
termination of the suit. By Section 3,540 this lien is
continued until the termination of the suit, by judg-
ment and execution, which may then be levied on the
crop in whosoever hands it may be. The lien thus
made fixed and specific, relates back to the date of
the contract, and overreaches any title acquired by
the purchaser of the crop from the tenant, although
without notice of the lien. But by Section 3,542, if
the landlord elects to proceed against the purchaser
for the value of the property, and not for the prop-
erty itself, he cannot recover if the purchaser had no
notice of the lien.

It follows that the complainant is entitled to the relief prayed for in his bill. The Chancellor so held, and we affirm the decree, with costs.